**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1-24-CR-74(1) |
| | § | |
| PUTNAM DARWIN RICHARDSON | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Putnam Darwin Richardson's ("Richardson") *pro se* Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (#46), filed on March 23, 2026.  The Government filed a response in opposition (#48).  United States Probation and Pretrial Services ("Probation") reviewed the filings and recommends denying the motion.  Having considered the motion, the submissions of the parties, Richardson's medical records, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be dismissed or, in the alternative, denied.

I.     Background

On August 7, 2024, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a four-count Indictment (#16), charging Richardson in Count One with Kidnapping, in violation of 18 U.S.C. § 1201(a)(1), in Count Two with Interstate Transmission of Extortionate Communication, in violation of 18 U.S.C. § 875(b), in Count Three with Brandishing a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c), and in Count Four with Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1).  On November 20, 2024, Richardson pleaded guilty to Counts One and Three of the Indictment pursuant to a written plea agreement.  On April 9, 2025, the court sentenced Richardson to a total of 294 months' imprisonment, consisting of 210 months'

imprisonment as to Count One and 84 months' imprisonment as to Count Three, to be served consecutively to Count One, followed by a five-year term of supervised release on each of Counts One and Three, both terms to run concurrently, in accordance with the terms of the plea agreement. He did not appeal his conviction or sentence. Richardson, age 80, is currently housed at Federal Correctional Institution Forrest City Medium ("FCI Forrest City Medium")[1], located in Forrest City, Arkansas. His projected release date is June 2, 2045.

The victim of the kidnapping, M.S., was Richardson's former lawyer who had represented Richardson in an aggravated kidnapping case filed in Texas state court in 1984 in which he was convicted and sentenced to 50 years' imprisonment. Richardson was on parole for that case at the time he committed his offenses of conviction in the case at bar in 2024. Probation summarized the nature and circumstances of Richardson's offenses of conviction in the Sentencing Recommendation section of the final Presentence Investigation Report, as follows:

> The defendant kidnapped M.S. at gun point, tied his hands, and forced M.S. into M.S.' vehicle. He then drove M.S. to an alternate location where he dumped M.S.' vehicle and moved M.S. to the defendant's vehicle. While moving M.S. to his (the defendant's) vehicle, the defendant placed handcuffs on M.S. and put a bag over M.S.' head. The defendant then drove M.S. to his (the defendant's) residence where he placed M.S. in a shed on his property. M.S.' legs were shackled with chains attached to the walls of the shed. The defendant then called M.S.' wife to demand a ransom of $1,000,000 and advised he would kill M.S. if she did not comply. Investigators were able to identify and locate the defendant, with the help of M.S.'s law office, and rescued M.S. two days later. A search of the defendant's residence revealed the firearm the defendant had brandished and pointed at M.S. during the kidnapping.

In his motion for compassionate release, Richardson claims that he has been diagnosed with Stage IV prostate cancer, which has been characterized by his treating medical providers as

---

[1] As the Government points out, at the time of sentencing, Richardson rejected a recommendation by the court for a designation to a Federal Medical Center.

terminal.  Richardson includes his Bureau of Prisons ("BOP") medical records as well as medical records obtained by the BOP from his personal physician, Gordon Sean Healey, M.D. ("Dr. Healey"), with regard to these allegations.  He moves the court for an order reducing his sentence to time served and granting his immediate release, or, in the alternative, imposing any lesser sentence the court deems appropriate, based on his medical condition.

 II.    Compassionate Release

    A.    Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord Freeman v. United States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c).  Section 3582(c)(1)(A) embodies a narrow exception to a conviction's finality.  *See Rutherford v. United States*, Nos. 24-820 & 24-860, 608 U.S. ___, 2026 WL 1485535, at *3 (U.S. May 28, 2026).  This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment.  The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

of imprisonment), after considering the factors set forth in section 3553(a)[2] to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities."). The First Step Act "opened a new procedural route for seeking a reduction" by allowing the prisoner to "request that the Bureau of Prisons file a motion on his behalf, and, if it declines or fails to do so within 30 days, he may file a motion himself." *Rutherford*, 2026 WL 1485535, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)).

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission").  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Rutherford*, 2026 WL 1485535, at *4; *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are:

(1)    the medical circumstances of the defendant;

(2)    the age of the defendant;

(3)     the family circumstances of the defendant;

(4)     whether the defendant was a victim of abuse while in custody;

(5)     other reasons similar in gravity to those previously described; and

(6)     an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1)     the defendant must have exhausted his administrative remedies;

(2)     "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)     the reduction must be consistent with the Commission's applicable policy statements; and

(4)     the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.     Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is

*not* jurisdictional, but that it *is* mandatory"). Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the Bureau of Prisons bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *McLean*, 2022 WL 44618, at *1.

The defendant bears the burden of proving that he has exhausted his administrative remedies before filing a motion for compassionate release. *United States v. Garcia-Martinez*, No. EP-24-CR-0764-DCG-1, 2025 WL 2427619, at *2 (E.D. Tex. Aug. 18, 2025); *accord United States v. DeJean*, No. 2:18-cr-120, 2025 WL 3687269, at *3 (E.D. La. Dec. 19, 2025); *United States v. Mahaffey*, No. 17-54-DLB-MAS-1, 2025 WL 1840598, at *2 (E.D. Ky. July 3, 2025); *United States v. Escobar*, No. 15-CR-150-2 (ARR), 2024 WL 2111573, at *2 (E.D. N.Y. May 10, 2024); *United States v. Avelar*, No. 3:16-cr-0351-B-2, 2022 WL 17096173, at *2 (N.D. Tex. Nov. 20, 2022); *United States v. Singleton*, No. 14-168, 2022 WL 3576767, at *1-2 (E.D. La.

Aug. 19, 2022). Without evidence that the defendant requested compassionate release from the warden and that thirty days have passed since the warden received or denied the request, the defendant fails to satisfy § 3582(c)(1)(A)'s exhaustion requirement. *Avelar*, 2022 WL 17096173, at \*2 (finding the exhaustion requirement was not met where a defendant provided a copy of a letter purportedly sent to the warden but did not provide proof the warden received the letter) (citing *United States v. Knox*, No. 3:12-CR-0252-B, 2020 WL 4432852, at \*2 (N.D. Tex. July 31, 2020)).

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at \*2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the Bureau of Prisons the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *United States v. York*, No. 4:07-CR-181-SDJ, 2025 WL 1397198, at \*2-3 (E.D. Tex. May 14, 2025); *United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at \*5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at \*1 (E.D. Tex. Jan. 18, 2023)). "It would disrupt the 'orderly system for reviewing compassionate-release applications' and 'incentivize[] line jumping' to permit defendants to present grounds for compassionate release to the Court that the Bureau of Prisons had not already received the opportunity to consider." *United States v. Silcox*, No. 3:17-CR-134-TAV-HBG-1, 2020 WL 4341758, at \*2 (E.D. Tenn. July 28, 2020) (quoting *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020)). Hence, the facts asserted in an inmate's

request to the warden and in his motion for compassionate release must be consistent. *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *United States v. Reeves*, No. 3:18-cr-313-B, 2020 WL 3895282, at *2 (N.D. Tex. July 10, 2020); *United States v. Samak*, No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020); *see Gonzalez*, 849 F. App'x at 117.

Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord DeJean*, 2025 WL 3687269, at *3; *Mendoza-Garibay*, 2023 WL 307459, at *2. "It is well-settled that the exhaustion requirement is not satisfied when the defendant previously sought administrative relief *on a different ground* than the ground presented to the district court." *DeJean*, 2025 WL 3687269, at *3. Successive compassionate release motions must independently satisfy the exhaustion requirement. *United States v. Ford*, No. 1:16-CR-19-HAB, 2021 WL 5980368, at *2 (N.D. Ind. Dec. 16, 2021). "If a prisoner were only required to make one request to the Bureau of Prisons and forever after [be] able to file new motions asserting new grounds for relief, the purpose of the exhaustion requirement would be severely undermined." *United States v. Wardle*, No. 5:18-57-KKC, 2021 WL 4822827, at *3 (E.D. Ky. Oct. 14, 2021); *accord Rivas*, 833 F. App'x at 558; *Ford*, 2021 WL 5980368, at *2.

In this instance, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement. The Government contends that "Richardson has not met any of the statutory requirements because he

has not exhausted all his administrative rights as required by statute." In his motion, Richardson claims:

> On or about 03/12/2026, Mr. Richardson submitted an electronic request for compassionate release/reduction in sentence to the Warden of FCI Forrest City where he is currently confined. More than 30 days have passed since the Warden received Mr. Richardson's request. My request is of an emergency nature, I believe that time is limited. Accordingly, the statutory exhaustion requirement is satisfied, and this Court may consider this motion.

> To the extent any further administrative review remains available, Mr. Richardson respectfully submits that strict exhaustion should be excused in light of the truly emergent and terminal nature of his condition and the risk that he may die before the administrative process is completed.

Nonetheless, as the Government points out, there is no evidence before the court that Richardson, in fact, submitted *any* request for compassionate release to the Warden of FCI Forrest City or to any other BOP personnel. Nor does Richardson provide any evidence that he gave the BOP the information necessary to investigate the grounds for relief he now raises. Richardson did not furnish the court a copy of any request he purportedly made to the warden or other BOP personnel seeking compassionate release. Moreover, it is apparent that 30 days did not elapse between the date he allegedly submitted his request to the warden (March 12, 2026) and the date he filed his current motion (March 23, 2026), as reflected by the Clerk of Court's file stamp. Probation affirms that Richardson did not submit a timely request to the warden, which was confirmed by a BOP supervisory attorney, who advised Probation that "no Administrative Remedy Requests were located for Mr. Richardson." Absent absence of a verifiable request for compassionate release to the warden, Richardson cannot prevail.

Moreover, the court questions the truly emergent nature of Richardson's condition. A medical report received from Dr. Healey shows that a laboratory test from a biopsy performed on

"Prostate, right, base lateral" indicated that Richardson had "Prostatic acinar adenocarcinoma, Gleason score 3" as early as February 26, 2021. A medical record from Dr. Healey dated January 17, 2022, states: "ASSESSMENT ○ Prostate cancer ○ Prostate-specific antigen in serum was elevated." A record from Dr. Healey dated May 9, 2024, similarly reflects that Richardson was assessed as having "prostate cancer." Yet, BOP medical records dated November 3 and 4, 2025, indicate that Richardson denied having "Carcinoma/Lymphoma." It was not until November 14, 2025, that Richardson reported a history of prostate cancer to the BOP. On the same date, November 14, 2025, Richardson was reclassified as a Medical Care Level 2 inmate.[3] In a BOP medical record dated November 17, 2025, Richardson reported that he was diagnosed with prostate cancer in 2023 and had surgery at that time but he was undergoing no current treatment. On March 16, 2026, a BOP medical record indicates that an ultrasound performed on Richardson was abnormal and showed a "mass seen in prostate." An MRI was to be scheduled for evaluation of the mass. Thus, despite his prior diagnoses with prostate cancer, Richardson, by his own admission, did not even attempt to seek compassionate release based on his prostate cancer until March 12, 2026. Yet, he adduces no evidence that he, in fact, submitted a request for compassionate release to the warden. Under these circumstances, Richardson is foreclosed from seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) at this time.

---

[3] According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the Bureau of Prisons."); *see United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government properly raised the rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'" (quoting *Franco*, 973 F.3d at 468)); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language:  all requests for compassionate release must be presented to the Bureau of Prisons before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Probation provides additional information regarding Richardson's request:

12

The undersigned probation officer obtained a response from United States Attorney's Office regarding this matter. The prosecuting attorney is "highly opposed" to Mr. Richardson's request for a compassionate release. Additionally, he stated the victim is also opposed to the request. To this end, the probation office does not support this motion due to the heinous nature of the offense. This is the offender's *second* kidnapping conviction. Both convictions involved him mentally torturing his victims by brandishing a firearm. Additionally, he has only served 8% of his current sentence. As such, that offers virtually no justice to the primary and secondary victims in this case. A collateral contact was conducted with the Texas Department of Criminal Justice – Parole Division because the Presentence Report shows him being on parole until 2039, for a 1984 kidnapping. The collateral contact revealed he was revoked on June 12, 2025. As such, if he is granted a compassionate release, he would have an active TDCJ detainer.

In any event, because Richardson presents no evidence that he submitted a request to the warden of FCI Forrest City Medium raising the claims he now asserts in his motion for compassionate release, he has not met his burden of proof to establish that he has exhausted his administrative remedies. Therefore, due to his failure to exhaust his administrative remedies before filing the current motion, the court lacks the authority to grant the relief Richardson requests.

III.    Conclusion

In sum, Richardson has not satisfied his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. Richardson has failed to show that he exhausted his administrative remedies before seeking compassionate release. Therefore, in accordance with the foregoing analysis, Richardson's *pro se* Motion for Compassionate Release (#46) is DISMISSED, or in the alternative, DENIED.

SIGNED at Beaumont, Texas, this 2nd day of June, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE